1          HONORABLE RONALD B. LEIGHTON

2

3

4

5

6                    UNITED STATES DISTRICT COURT
7                   WESTERN DISTRICT OF WASHINGTON
                            AT TACOMA
8

9    KAREN SLATER, individually and on          CASE NO. C10-05822-RBL
     behalf of the ESTATE OF BEVERLY
     JEAN MAUCK, a deceased person,             ORDER GRANTING DEFENDANTS'
10   ALLEN MAUCK, and PAMELA                     MOTION TO DISMISS
     MAUCK, individually and RYAN
11   REHBERG PERSONAL
     REPRESENTATIVE on behalf of the
12   ESTATE OF BRIAN MAUCK, a
     deceased person,
13
                    Plaintiffs,
14
            v.
15
     HAROLD W. CLARKE, KEVIN
16   BURKE, individually, RICHARD
     RANGE, individually, WILLIAM
17   LOCHRIE, individually, ERIN
     DONNELLY, individually, and JOHN
18   DOES 1-10,

19                   Defendants.

20

21          THIS MATTER is before the Court on Defendants' motion to dismiss. The Ninth Circuit

22   resolved Defendants' absolute immunity claim in favor of Defendants. Plaintiffs' claim based on

23   the Defendants' failure to deduct "good time" from Tavares' sentence, however, was left untouched.

24   *Slater v. Clarke*, 700 F.3d 1200 (9th. Cir. 2012). Accordingly, this Court examines Defendants'

arguments for dismissal in relation to the failure to deduct good time from Tavares' sentence.  For the reasons explained below, Plaintiffs have not stated a claim upon which relief can be granted because Defendant Burke enjoys sovereign and qualified immunity for his actions. Defendants' motion to dismiss is GRANTED, and the Plaintiffs' remaining claims are DISMISSED with prejudice.

## I.  BACKGROUND

### A. Facts

In 1991, Daniel Tavares was sentenced to 17-20 years in prison in Massachusetts state court for murdering his mother.  While in prison, Tavares joined a violent white supremacist gang, assaulted and threatened prison staff and inmates, and made threats against the life of then-Governor Mitt Romney, among others.  Compl. ¶ 4.2.  From 1993 to 2006, prison officials filed over one hundred disciplinary reports against Tavares while in prison, leading to deductions in his "good time" credit.  Six of these were denied because they were not timely filed.  This resulted in Massachusetts prison officials failing to deduct 689 days in "good time[1]" from Tavares' sentence, and his release 689 days early. *Id.*

Plaintiffs allege that Defendant Burke, of the Executive Office of Public Safety and Security at the time, failed to properly train and monitor his agents with regard to tracking good time forfeitures, and that those failures led directly to Tavares' early release.

Tavares was scheduled for release on June 14, 2007.  In light of this, Lt. James Hanfin warned Donnelly of Tavares' violent history. *Id.* ¶ 4.6.   As a result of the conversation, on June 11, Tavares was charged and arraigned for two counts of assault on prison staff members

---

[1] Apparently, Tavares was automatically credited with good time.  His behavior should have resulted in a forfeiture of that credit, and a longer stay in prison.

1  occurring while Tavares was incarcerated.  After Tavares was released from his murder sentence,

2  however, the Clinton District Court Judge released him on his own recognizance with regard to

3  the pending assault charges.  The Clinton District Court ordered him to remain in the area but

4  Tavares absconded to Washington state.  William Lochrie, a lieutenant with the Office of

5  Investigative Services of the Massachusetts Department of Corrections, informed Richard Range

6  of Tavares' propensity to commit violence. Range, an employee at the Massachusetts

7  Commonwealth Fusion Center, entered two warrants for Tavares' arrest on July 24. *Id.* ¶ 4.7.

8  After learning of Tavares' whereabouts in Washington, his violent history, and the threats

9  he had made against Mitt Romney, Range updated Tavares' arrest warrants in the NCIC system

10 and noted his propensity to commit violence.  After further reviewing Tavares' history with

11 Lochrie, Range contacted Defendant Donnelly, a Worcester County Assistant District Attorney.

12 According to Plaintiffs, Donnelly stated that she would review Tavares' case . *Id.* ¶ 4.17.

13 In light of the information regarding Tavares, Defendant Donnelly decided to extradite

14 Tavares but limited the order to the New England states.  *Id.* ¶ 4.19.  Defendant Donnelly

15 contacted the FBI about Tavares, and it launched an investigation.  Range confirmed with the

16 FBI that Tavares had established permanent residence in Washington. *Id.* ¶ 4.20.  Per a request

17 from the Boston FBI, the Seattle FBI and the Washington State Patrol began surveillance on

18 Tavares outside of his Washington home.  According to Plaintiffs, Defendant Donnelly decided

19 to leave Tavares in Washington and instructed the Washington State Patrol not to arrest him. *Id.*

20 ¶ 5.2.

21 On November 17, 2007, two days before Romney's presidential campaign was scheduled

22 to stop in Seattle, Tavares broke into Beverly and Brian Mauck's home, high on drugs, and shot

23 them dead.

24

**B.  Procedure**

Plaintiffs brought this action under 42 U.S.C. § 1983 and 1985 and for negligence. Plaintiffs allege under 42 U.S.C. § 1983 and 1985 that Defendants Burke, Range, Lochrie, and Donnelly conspired to violate and violated their constitutionally protected right to life and bodily security. Plaintiffs also allege that Defendants negligently released Tavares from prison, and they negligently failed to extradite him.  Defendants moved to dismiss on grounds that they are entitled to absolute immunity regarding the decision to extradite.  This Court issued an order denying Defendants' motion on grounds that Defendants actions in choosing to limit the extradition order were not "intimately associated with the judicial phase of the criminal process," and therefore Defendants are not entitled to absolute immunity. (Dkt. #54)

Defendants appealed the absolute immunity issue to the Ninth Circuit.  The Ninth Circuit held that because Tavares had been charged and arraigned for his assault crimes, his new criminal case had moved from the investigatory phase to the judicial phase.  The court stated that "functions performed during the investigatory, as opposed to the judicial, phase are not entitled to absolute immunity." *Slater v. Clarke*, 700 F.3d 1200, 1203 (9th. Cir. 2012) (citing *Roe v. City & County of San Francisco*, 109 F.3d 578, 548 (9th Cir. 1997)).  Therefore, because "the decision of whether to extradite was the next step in the judicial process," Defendants are entitled to absolute immunity regarding the extradition order. *Id*.

Accordingly, this Court issued a minute order dismissing all Plaintiffs' claims with prejudice.  (Dkt. # 66).  Plaintiffs moved for Reconsideration arguing that, aside from the claims regarding the extradition order, "all other claims are still active, including state law claims and claims related to Tavares' early release from prison." (Dkt. #67 at 3).  In response, Defendants conceded that the claims regarding the Massachusetts officials' failure to deduct good time from

Tavares' sentence while he was in prison were left 'untouched' by the Ninth Circuit's opinion. (Dkt. #69 at 3).  This Court granted Plaintiffs' motion for Reconsideration, and now considers the remaining claims.

## C.  DISCUSSION

### 1.  Remaining Claim

There are two remaining defendants in this lawsuit: Burke and Donnelly.  In light of the Ninth Circuit's opinion however, there is only one remaining claim: Burke's alleged failure to train his subordinates regarding the tracking of good time deductions.

The allegations against Donnelly regarding her alleged instruction to the Washington State Patrol to not arrest Tavares were subsumed by the Ninth Circuit's opinion.  Donnelly's alleged instruction occurred after Tavares' case passed from the investigatory to the judicial phase.  Her actions are therefore entitled to absolute immunity under the Ninth Circuit's opinion in this case.  *See Slater v. Clarke*, 700 F.3d 1200, 1203 (9th. Cir. 2012).  Therefore, Defendants' motion to dismiss with respect to Defendant Donnelly is GRANTED, and Plaintiffs' claim against Donnelly is DISMISSED with prejudice.

The only remaining claim is Plaintiffs' claim that Defendant Burke's failed to train and monitor his subordinates regarding tracking good time deductions at the Massachusetts Department of Corrections, and that this failure led to Tavares' early release and the Washington state murders.

Plaintiffs argue that because Burke oversaw operations of the MDOC, he failed to 'properly supervise, monitor, and train [his] employees regarding the proper procedure for accounting for forfeitures in statutory good time,' which led to Tavares' premature release. Compl. ¶ 5.1.  Plaintiffs are suing Burke in both his individual and official capacities.  They seek

1  declaratory and injunctive relief requiring Burke to "implement a formal system for tracking

2  forfeiture of good time credit." *Id.* ¶ 5.8.

3      Burke claims that he enjoys sovereign immunity from suit in his official capacity, and

4  that he is qualifiedly immune from suit in his individual capacity.  Plaintiffs claim that sovereign

5  immunity does not apply to Burke under the *Ex parte Young* exception to sovereign immunity,

6  and that qualified immunity does not apply to Burke under the state-created danger exception.

7  The Court considers the immunity issues separately.

8      **2.  Standard**

9      Under Fed. R. Civ. P. 12(b)(6), a complaint should be liberally construed in favor of the

10  plaintiff and its factual allegations taken as true. *See, e.g.*, *Oscar v. Univ. Students Co-Operative*

11  *Ass'n*, 965 F.2d 783,785 (9th Cir. 1992).  The Supreme Court has explained that "when

12  allegations in a complaint, however true, could not raise a claim of entitlement to relief, this

13  basic deficiency should be exposed at the point of minimum expenditure of time and money by

14  the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal

15  citation and quotation omitted).  A complaint must include enough facts to state a claim for relief

16  that is "plausible on its face" and to "raise a right to relief above the speculative level." *Id.* at 555.

17  The complaint need not include detailed factual allegations, but it must provide more than "a

18  formulaic recitation of the elements of a cause of action." *Id.*  A claim is facially plausible when

19  plaintiff has alleged enough factual content for the court to draw a reasonable inference that the

20  defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

21  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

22  statements, do not suffice." *Id.* at 1949.

23

24

### 3. Sovereign Immunity

Plaintiffs sued Burke in his official capacity as an entity of Massachusetts. Generally, the Eleventh Amendment bars a citizen from bringing a suit against a state in federal court. The Civil Rights Act of 1871, under which Plaintiffs bring their claims, does not abrogate the sovereign immunity provided by the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 344-45 (1979).

The *Ex parte Young* exception to sovereign immunity, however, allows suits against state officials for prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123 (1908). *See also Edelman v. Jordan*, 415 U.S. 651 (1974). Plaintiffs argue that they seek prospective injunctive relief from Burke, and thus they fall under the *Ex parte Young* exception to sovereign immunity. Burke argues that because Plaintiffs do not argue an ongoing violation of federal law, the *Ex parte Young* exception does not apply to the Plaintiffs' claims, and he is immune under the doctrine of sovereign immunity.

Burke is correct. In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Public Serve. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). The *Ex parte Young* exception to a State's sovereign immunity "rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Id.* at 1638.

Plaintiffs do not allege that Burke's alleged failure to properly monitor his employees is an ongoing constitutional violation. In fact, Burke no longer holds his position as Secretary of

1    the Executive Office of Public Safety and Security, and thus no longer supervises anyone at the

2    MDOC.

3        Plaintiffs also do not allege that the existence of the allegedly inadequate system for

4    tracking good time deductions is an ongoing constitutional violation.  Plaintiffs allege that other

5    'offenders' have traveled from Massachusetts to Washington and killed people, but they do not

6    allege that these offenders were prematurely released from prison due to the tracking system, or

7    that Burke was involved.  Compl. ¶ 1.4.   They merely argue that as a result of Burke's failure to

8    ensure an 'adequate' tracking system through monitoring his agents, Tavares was able to abscond

9    to Washington and kill the Maucks.

10        Additionally, an injunction requiring Burke to implement a new tracking system would

11    do more than command Burke to 'refrain from violating federal law.' Plaintiffs are not alleging

12    that the current tracking system is an ongoing violation needing correction. If this Court were to

13    order Burke to implement a better tracking system, it would infringe on Massachusetts'

14    sovereignty to choose its tracking system.  Thus, such an injunction would be beyond the scope

15    of the *Ex parte Young* doctrine.

16        Therefore, Plaintiffs do not allege an ongoing violation of constitutional rights that the

17    injunctive relief they seek would serve to correct.  Accordingly, the *Ex parte Young* exception to

18    sovereign immunity does not apply and Burke is entitled to sovereign immunity insofar as he is

19    being sued in his official capacity. Burke's motion to dismiss the claims against him in his official

20    capacity is GRANTED and those claims are dismissed with prejudice.

21       **4.  Qualified Immunity**

22        Burke also claims he is protected in his individual capacity under the doctrine of qualified

23    immunity.  Under the qualified immunity doctrine, 'government officials performing

24

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009). In *Pearson*, the Supreme Court reversed the prior *Saucier* mandate requiring district courts to decide each question in order. Claims should be resolved "at the earliest possible stage in litigation" because qualified immunity protects officers from suit in addition to liability. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631).  The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Officials are protected from reasonable legal mistakes.  *Saucier*, 533 U.S. at 205.

The threshold question is whether the Defendants violated the Plaintiffs' constitutional rights.  As a general rule, the state has no duty to protect the public from the actions of private individuals.  *DeShaney v. Winnebago County Dept of Social Services*, 489 U.S. 189, 195 (1989). ("Nothing in the due process clause requires the state to protect life, liberty, and property of its citizens against invasion by private actors.")  This is known as the public duty doctrine, to which there are two exceptions: the existence of a special relationship, and state-created danger.

1  *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007).  Plaintiffs claim that both

2  exceptions apply, and that if they are correct on either count, the Defendants have violated a

3  constitutional right, triggering the second prong of the qualified immunity test.

    **a.  Special Relationship**

5        Plaintiffs argue that because Tavares had been incarcerated and they were aware of his

6  propensity to commit violence, Massachusetts officials had a special relationship with Tavares

7  requiring them to prevent him from harming others.  Burke argues that he had no special

8  relationship with Tavares or the Plaintiffs. Burke is correct.

9        'In substantive due process analysis, it is the State's affirmative act of restraining the

10  individual's freedom to act on his own behalf–through incarceration, institutionalization, or other

11  similar restraint of personal liberty–which is the 'deprivation of liberty' triggering the protection

12  of the Due Process Clause.' *DeShaney*, 489 U.S. at 200.  When Tavares shot the Mauck's, he was

13  not restrained through incarceration, institutionalization, or other means that trigger a special

14  relationship between him and Massachusetts.  Therefore, a special relationship did not exist

15  between Massachusetts and Tavares.

16        Additionally, no special relationship existed between Massachusetts and the Plaintiffs.

17  Though Burke was aware of Tavares' violent nature, he could not have predicted that these

18  Plaintiffs would be harmed by Tavares.  *See Martinez v. CA*, 444 U.S. 277, 285 (1980) (murder

19  by a parolee five months after release did not give rise to a §1983 claim where the parole board

20  was not aware that the victim, distinguished from the public at large, was at risk).  *See also*

21  *Ketchum v. Alameda County*, 811 F.2d 1243, 1247 (9th Cir. 1987) (rape by escaped inmate did

22  not give rise to 1983 claim where no special relationship existed between the plaintiff and the

23

24

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS - 10

1    inmate, or the plaintiff and the state.)  Thus, Burke had no special relationship with Tavares or

2    the Plaintiffs, and the special relationship exception to the public duty doctrine does not apply.

3        **b.  State-Created Danger**

4        State actors may liable for the criminal acts of an individual under the state-created

5    danger exception "where they (1) affirmatively place an individual in danger, (2) by acting with

6    deliberate indifference to a known or obvious danger in subjecting the plaintiff to it." *Kennedy v.*

7    *City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).  In analyzing the first prong, courts

8    consider "whether the officer left the person in a situation that was more dangerous than the one

9    in which they found him." *Id.*

10       Burke argues that by allegedly failing to monitor his employees, he did not affirmatively

11   place Plaintiffs in danger, and that his actions were not the proximate cause of Plaintiffs' harm.

12   Plaintiffs argue that because Tavares' early release from prison is a "but-for" cause of their harm,

13   Burke created the danger. Burke is correct.

14       By allegedly failing to supervise his subordinates, Burke did not act affirmatively to place

15   Plaintiffs in danger because he did not act at all. *See Penilla v. City of Huntington Park*, 115 F.3d

16   707, 711 (9th Cir. 1997) ("state actor in Ninth Circuit has constitutional duty under the Due

17   Process Clause to protect an individual where the state places that individual in danger through

18   affirmative conduct.")  *See also L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (the affirmative act

19   of assigning female nurse to work with inmate with history of violence toward women who then

20   raped her held as state-created danger.); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (the

21   affirmative act of ordering a passenger out of a car and leaving her in dangerous area where she

22   was then raped held to be state-created danger).  Under this authority, Burke's failure to supervise

23

24

1   his subordinates does not constitute an affirmative act sufficient to trigger the state-created

2   danger exception to the public duty doctrine.

3          Additionally, "but-for" causation is not enough to prove causation in the §1983 context.

4   *See Van Ort v. Stanewich*, 92 F.3d 831, 837, (9th Cir. 1996).  The actions of the state actor must

5   be the proximate cause of the 1983 injury. *Id.*  Burke's failure to monitor his subordinates is too

6   far removed from Tavares' killing the Mauck's to be the proximate cause of Plaintiffs' injuries.

7          Because Burke did not act affirmatively to place Plaintiffs in danger and, because his

8   actions were not the proximate cause of Plaintiffs harm, the state-created danger exception to the

9   public duty doctrine does not apply.

10          Accordingly, neither exception to the public duty doctrine applies to Burke's actions. He

11  did not violate the Plaintiffs' constitutional rights as a matter of law.  Under *Pearson,* there is no

12  need to address the second prong of the qualified immunity test.

13          Therefore, Burke is entitled to qualified immunity for his alleged actions, and the

14  motion to dismiss is **GRANTED** with respect to claims against him in his individual capacity.

15                          **D.  CONCLUSION**

16          For the reasons explained above, Plaintiffs have not stated a claim upon which relief can

17  be granted.  Defendants' Motion to Dismiss is **GRANTED** and all remaining claims are

18  dismissed with prejudice.

19          IT IS SO ORDERED.

20          Dated this 30th day of July, 2013.

21

22          _____

23          RONALD B. LEIGHTON
            UNITED STATES DISTRICT JUDGE

24

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS - 12